COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Petty and Alston
Argued at Richmond, Virginia


ALAN BIDDISON AND
   LOIS BIDDISON
                                                              OPINION BY
v.        Record No. 2940-08-2                    JUDGE ROBERT J. HUMPHREYS
                                                              AUGUST 11, 2009
VIRGINIA MARINE RESOURCES COMMISSION AND
   MORNINGSTAR MARINAS/GWYNN'S ISLAND, LLC


            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                        Theodore J. Markow, Judge

            John B. Thompson (Sherry A. Fox; ThompsonMcMullen, P.C., on
            briefs), for appellants.

            David C. Grandis, Assistant Attorney General (William C. Mims,
            Attorney General; Roger L. Chaffe, Senior Assistant Attorney
            General; Carl Josephson, Senior Assistant Attorney General; James
            C. Breeden; John H. Capitano; Breeden & Breeden; K&L Gates,
            on brief), for appellees.


        Alan and Lois Biddison ("appellants") appeal a ruling of the Circuit Court of the City of

Richmond dismissing their appeal of a decision of the Virginia Marine Resources Commission

("VRMC") on the ground that appellants failed to establish standing to contest the decision.  On

appeal, appellants contend that the circuit court erred in finding that (1) appellants failed to

present facts sufficient to establish injury in fact and (2) appellants failed to establish a causal

connection between the permitted activities and any alleged harm.  In the alternative, appellants

argue that they suffered a procedural injury sufficient to confer standing when VMRC "abdicated

its responsibility to address the impact of the Boatel's upland expansion."  For the following

reasons, we reverse the decision of the circuit court.

I.  Background

The facts relevant to this appeal are as follows.  Appellants own approximately five acres of waterfront property on Milford Haven in Mathews County.  Appellants' family has owned this property for many generations.  Appellants' property is adjacent to a marina owned by Morningstar Marinas/Gwynn's Island LLC ("the Boatel").

At its regularly scheduled meeting on January 23, 2007, VMRC considered a permit application submitted by the Boatel's owner at the time, David Fitch.[1]  The Boatel sought permission from VMRC to use state-owned bottomlands pursuant to Code § 28.2-1205. Specifically, the Boatel requested authorization to (1) remove all existing fixed piers and construct four new floating piers of various lengths to support the dry stack storage operation, fueling, and sewage pump-out, (2) create eighteen wetslips and seven staging slips, and (3) dredge thirty-seven hundred cubic yards of subaqueous bottom material.[2]  Appellants opposed the permit application.

As part of its review of the Boatel's permit application, VMRC was presented with evidence by both those in support of and opposed to the proposed project.  The evidence before VMRC included testimony, exhibits, and public comments from both the Department of Health and the Virginia Institute of Marine Science.  After considering all this evidence, VMRC voted to approve the Boatel's permit application.  Appellants then appealed VMRC's decision to the Circuit Court for the City of Richmond.

---

[1] Gwynn's Island Boatel, L.L.C. conveyed the property affected by the VMRC's decision to Morningstar Marinas/Gwynn's Island LLC on October 23, 2007.

[2] At the meeting an environmental engineer explained to VMRC that the dredged material would be "pumped into a 150 foot by 300 foot bermed upland disposal area" and the return water from that disposal area will be routed along a drainage ditch on the east side of the property.  This drainage ditch runs between appellants' property and the Boatel's.

Before hearing the merits of appellants' appeal, the circuit court held an evidentiary hearing on November 10, 2008, to determine whether or not appellants had standing to appeal VMRC's decision. Lois Biddison ("Biddison") testified that her family has owned their property on Milford Haven for "as long as records have been kept in Mathews." Biddison further testified that because of the dredging, "boats leaving the boatel . . . tend[] to cut closer to our shore when they're going east to go out into the Bay, and they come closer to our shore and closer to the pier." As a result, appellants have "experienced two to three feet of wash on [their] shoreline since last year." Biddison also noted that the increase in shoreline wash affected both appellants' picnic area as well as the area where appellants launch their kayak. In addition, Biddison testified that appellants use their pier for swimming, crabbing, and fishing and indicated that because of the marina's expansion and the increase in boat activity in the water, she would not want her family swimming from the pier.[3]

Biddison also testified that muddy water from the Boatel's "spoil site"[4] ran down a drainage ditch separating the two properties and created a "big flume of muddy water" into Milford Haven. Biddison further testified that the drainage ditch had been on the property for over sixty years and that she had never seen this amount of muddy water travel through the ditch.

Robert C. Neikirk ("Neikirk") was the environmental engineer who processed the Boatel's permit application and briefed VMRC on it. Neikirk testified on cross-examination that he assumed the project would result in increased boat traffic near appellants' property.

---

[3] Biddison also testified that appellants have two oyster bed leases in the area. One is located directly in front of their property; however, it has been condemned for more than seven years. Appellants sub-lease the other oyster bed to a sea farm. Biddison testified that this oyster bed is located "at the end of Mill Point." However, from the record before us, we are unable to ascertain the geographical relation of Mill Point to the Boatel or appellants' property.

[4] A spoil site is an area where dredged material is deposited for disposal.

On November 20, 2008, the circuit court entered an order dismissing appellants' appeal with prejudice. The circuit court concluded that appellants lacked standing because they "did not present facts sufficient to establish injury in fact, nor did they establish a casual connection between the Boatel's permitted activities and any alleged harm."

Appellants now appeal that decision to this Court.

## II. Analysis

It is important to note that "[s]tanding to maintain an action is a preliminary jurisdictional issue having no relation to the substantive merits of an action." Andrews v. American Health & Life Ins. Co., 236 Va. 221, 226, 372 S.E.2d 399, 402 (1988). Thus, the concept of "standing" is not concerned with whether or not a party will ultimately prevail on the legal merits of an issue but rather with the ability of a party to seek redress through the courts in the first place by demonstrating sufficient connection to, and actual or potential harm from, the law or action challenged. The question of whether or not a litigant has standing is a "question[] of law subject to *de novo* review on appeal." Moreau v. Fuller, 276 Va. 127, 133, 661 S.E.2d 841, 845 (2008).

Code § 28.2-1205(F) sets forth the standing requirement for challenging a decision of VMRC. It provides that "[a]ny person *aggrieved* by a decision of the Commission [VMRC] under this section is entitled to judicial review in accordance with the provisions of the Administrative Process Act (§ 2.2-4000 et seq.)." Code § 28.2-1205(F) (emphasis added). Appellants argue that we should interpret the word "aggrieved" in Code § 28.2-1205(F) in the same manner as it is defined in Code § 62.1-44.29, [5] which concerns the standing requirements

---

[5] Code § 62.1-44.29 provides:

> Any owner aggrieved by or any person who has participated, in person or by submittal of written comments, in the public comment process related to a final decision of the Board under § 62.1-44.15(5), 62.1-44.15(8a), (8b), and (8c), 62.1-44.15:20, 62.1-44.15:21, 62.1-44.15:22, 62.1-44.15:23, 62.1-44.16,

to appeal a decision of the State Water Control Board. Although the two statutes do contain similar language, Code § 62.1-44.29 specifically incorporates the criteria for establishing standing under Article III of the United States Constitution, while Code § 28.2-1205(F) does not. Because "we presume that the legislature 'chose, with care,' the specific words of the statute," we do not reach the conclusion advocated by appellants. Kane v. Szymczak, 41 Va. App. 365, 371, 585 S.E.2d 349, 352-53 (2003) (quoting Simon v. Forer, 265 Va. 483, 490, 578 S.E.2d 792, 796 (2003)). Had the General Assembly so intended, they would have included the same reference to Article III in Code § 28.2-1205(F) as they did in Code § 62.1-44.29.

Though we disagree with appellants' contention as to the meaning of the word "aggrieved" in Code § 28.2-1205(F), that conclusion does not end our analysis. In Bd. of Supervisors v. Bd. of Zoning Appeals, 268 Va. 441, 449-50, 604 S.E.2d 7, 11 (2004), the Supreme Court of Virginia discussed the meaning of the word "aggrieved" as it pertains to standing. The Supreme Court explained:

> "The term 'aggrieved' has a settled meaning in Virginia when it becomes necessary to determine who is a proper party to seek court relief from an adverse decision. In order for a petitioner to be 'aggrieved,' it must affirmatively appear that such person had some direct interest in the subject matter of the proceeding that he

62.1-44.17, 62.1-44.19, or 62.1-44.25, whether such decision is affirmative or negative, is entitled to judicial review thereof in accordance with the provisions of the Administrative Process Act (§ 2.2-4000 et seq.) *if such person meets the standard for obtaining judicial review of a case or controversy pursuant to Article III of the United States Constitution.* A person shall be deemed to meet such standard if (i) such person has suffered an actual or imminent injury which is an invasion of a legally protected interest and which is concrete and particularized; (ii) such injury is fairly traceable to the decision of the Board and not the result of the independent action of some third party not before the court; and (iii) such injury will likely be redressed by a favorable decision by the court.

(Emphasis added).

> seeks to attack. . . . The petitioner 'must show that he has an immediate, pecuniary and substantial interest in the litigation, and not a remote or indirect interest.' . . . Thus, it is not sufficient that the sole interest of the petitioner is to advance some perceived public right or to redress some anticipated public injury when the only wrong he has suffered is in common with other persons similarly situated. *The word 'aggrieved'* in a statute contemplates a substantial grievance and *means a denial of some personal or property right, legal or equitable*, or imposition of a burden or obligation upon the petitioner different from that suffered by the public generally."

Id. (quoting Virginia Beach Beautification Comm'n v. Board of Zoning Appeals, 231 Va. 415, 419-20, 344 S.E.2d 899, 902-03 (1986)) (emphasis added). To establish standing under this definition of "aggrieved," appellants were required to demonstrate that they possessed either "an immediate, pecuniary and substantial interest in the litigation" or that they were denied, "some personal or property right, legal or equitable," by VMRC's decision. Id. We hold that appellants produced sufficient evidence to establish standing under this standard.

The evidence is uncontested that appellants own waterfront property adjacent to the Boatel. So situated, appellants' property also constitutes "riparian land," making appellants "riparian land owners." The final sentence of Code § 28.2-1205(F) provides that "[n]othing in this subsection shall be construed to deprive a riparian landowner of such rights as he may have under common law." "[R]iparian rights . . . 'are qualified property rights incident to the ownership of the soil through or by which the waters of a stream flow.'" Thurston v. City of Portsmouth, 205 Va. 909, 912, 140 S.E.2d 678, 680 (1965) (quoting Hite v. Town of Luray, 175 Va. 218, 226, 8 S.E.2d 369, 372 (1940)). As such, "[a] 'riparian right is property, and is valuable.'" Id. (quoting Taylor v. Commonwealth, 102 Va. 759, 771, 47 S.E. 875, 880 (1904)). "*Riparian owners* have the right to make reasonable use of the water flowing past their land, and they *have a right to enjoy the recreational and aesthetic advantages that are conferred on such*

*land adjoining a watercourse*." State Water Control Bd. v. Crutchfield, 265 Va. 416, 427-28, 578 S.E.2d 762, 768 (2003) (emphasis added).

In this case, appellants asserted facts sufficient to support their claim that their right to enjoy the recreational and aesthetic advantages of their waterfront property on Milford Haven as riparian landowners was adversely impacted by VMRC's decision to grant the Boatel's permit. Biddison testified that appellants have experienced an additional two to three feet of shoreline wash on their property as a result of boats passing closer to the shore through the new dredge cut. Biddison further testified that this increased wash has affected the area which appellants use to picnic and launch their kayak. Biddison also testified that the new dredge cut allows boats to pass closer to appellants' pier, which is used by appellants to swim, fish, and crab. Biddison indicated that because of the increased boat activity in the water, she did not want her grandchildren swimming from the pier. In addition, Biddison testified that muddy water from the Boatel's spoil site drained down a ditch on appellants' property and created a "big flume of muddy water" in Milford Haven. In light of this evidence, we hold that appellants' rights as riparian landowners may have been adversely affected by VMRC's decision to grant the Boatel's permit.

Moreover, appellants have a direct and substantial interest in the subject matter of the litigation as the owners of adjacent or nearby property to the permitted activity. Code § 28.2-1205(A) provides:

> *When determining whether to grant or deny any permit for the use of state-owned bottomlands*, the Commission shall be guided in its deliberations by the provisions of Article XI, Section I of the Constitution of Virginia. In addition to other factors, the Commission shall also consider the public and private benefits of the proposed project and shall exercise its authority under this section consistent with the public trust doctrine as defined by the common law of the Commonwealth adopted pursuant to § 1-200 in order to protect and safeguard the public right to the use and enjoyment of the subaqueous lands of the Commonwealth held in

trust by it for the benefit of the people as conferred by the public trust doctrine and the Constitution of Virginia. *The Commission shall also consider the project's effect on the following:*

    1. Other reasonable and permissible uses of state waters and state-owned bottomlands;

    2. Marine and fisheries resources of the Commonwealth;

    3. Tidal wetlands, except when this has or will be determined under the provisions of Chapter 13 of this title;

    4. *Adjacent or nearby properties*;

    5. Water quality; and

    6. Submerged aquatic vegetation (SAV).

(Emphasis added). Thus, subsection (4) of Code § 28.2-1205(A) specifically requires VMRC to consider the effect of a proposed project on adjacent or nearby properties. Clearly appellants, who own or have a riparian interest in property adjacent to the Boatel, have a direct and substantial interest in this litigation simply by virtue of the fact that VMRC was required by statute "to consider the project's effect" on their property prior to granting the Boatel's permit. Code § 28.2-1205(A). Given this statutory requirement, the Attorney General's argument to the contrary is illogical, and we hold that appellants qualify as a "person aggrieved" under Code § 28.2-1205(F) and "[are] entitled to judicial review in accordance with the provisions of the Administrative Process Act (§ 2.2-4000 et seq.)." Code § 28.2-1205(F).

Because we hold that appellants presented sufficient evidence to establish that they were "aggrieved" under Code § 28.2-1205(F) and, thus, had standing to appeal the decision of VMRC, we need not address the issue of whether appellants suffered a procedural injury sufficient to confer standing. "In this case, as in all others, we seek to decide cases 'on the best and narrowest

ground available' from the record." <u>Kirby v. Commonwealth</u>, 50 Va. App. 691, 702 n.2, 653 S.E.2d 600, 603 n.2 (2007) (citations omitted).

III.  <u>Conclusion</u>

For the foregoing reasons, we hold that the circuit court erred in finding that appellants lacked standing to appeal VMRC's decision to grant a permit to the Boatel.  Thus, we reverse the circuit court and remand for further proceedings consistent with this opinion.

<u>Reversed and remanded.</u>
