COURT OF APPEALS OF VIRGINIA

Present:   Judges Petty, Alston and Senior Judge Coleman
Argued at Alexandria, Virginia


RESTON HOSPITAL CENTER, LLC
                                                                    OPINION BY
v.        Record No. 2636-10-4                            JUDGE WILLIAM G. PETTY
                                                                    NOVEMBER 22, 2011
KAREN REMLEY, M.D., M.B.A., F.A.A.P.,
  STATE HEALTH COMMISSIONER, AND
  INOVA HEALTH CARE SERVICES, INC., d/b/a
  INOVA FAIR OAKS HOSPITAL


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Pamela S. Baskervill, Judge Designate

Robert L. Hodges (J. William Boland; Nathan A. Kottkamp;
Thomas J. Stallings; Jeffrey D. McMahan, Jr.; McGuire Woods,
LLP, on briefs), for appellant.

Ishneila G. Moore, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General; David E. Johnson, Deputy Attorney
General; Allyson K. Tysinger, Senior Assistant Attorney General, on
brief), for appellee Karen Remley, M.D., M.B.A., F.A.A.P., State
Health Commissioner.

Amandeep S. Sidhu (M. Miller Baker; H. Guy Collier; McDermott
Will & Emery LLP, on brief), for appellee Inova Health Care
Services, Inc., d/b/a Inova Fair Oaks Hospital.


Reston Hospital Center ("Reston") appeals a ruling of the Circuit Court of Fairfax

County dismissing Reston's appeal of a decision by the State Health Commissioner to issue a

certificate of public need authorizing Inova Health Services ("Inova") to provide new radiation

therapy services at its Fair Oaks Hospital.  The circuit court held that Reston was not

"sufficiently aggrieved to have standing" to appeal the Commissioner's decision.  On appeal,

Reston raises six assignments of error.  Reston principally argues that it has standing to appeal

under the Virginia Administrative Process Act ("VAPA") because Code § 32.1-102.3 required

the Commissioner to consider the impact that the issuance of the certificate would have on the utilization and efficiency of competing services that Reston provides.[1] Reston further argues that the circuit court erroneously applied a standard of review that gave deference to the factual findings of the Commissioner and improperly relied on those findings to determine standing.[2] Reston argues that the circuit court should have taken the allegations in its petition for appeal as true and that those allegations showed that it had standing to appeal under the VAPA. Alternatively, it argues that the evidence in the administrative record demonstrated standing,[3] and if the circuit court believed otherwise, the court should have held an evidentiary hearing on the matter.[4] For the following reasons, we hold that Reston has standing to appeal the Commissioner's decision to the circuit court because it is a "party aggrieved" as set forth in the VAPA, and thus we reverse.[5]

## I. BACKGROUND

The facts relevant to this appeal are as follows. Inova applied with the Commissioner for a certificate of public need that would authorize it to establish radiation therapy services at its

---

[1] Reston's first assignment of error encapsulates this argument. In a related second assignment of error, Reston alleges error based on the circuit court's failure to follow the "basic law" of the certificate of public need system by failing to notice Reston as a "named, losing party" by virtue of its good cause party status and the fact that it argued against issuance of the certificate.

[2] Reston's third and fourth assignments of error encapsulate these arguments. Since these arguments present the question as to how we should view the factual allegations used to support Reston's standing, we necessarily address them in order to address the underlying issue of standing presented by Reston's principal argument.

[3] Reston's fifth assignment of error encapsulates this argument.

[4] Reston's sixth assignment of error encapsulates this argument.

[5] Because we hold that Reston has standing as an aggrieved party, we necessarily address Reston's first, third, fourth, and fifth assignments of error. For that same reason, we do not reach Reston's second and sixth assignments of error.

Fair Oaks Hospital by installing a linear accelerator there.[6] As part of its application, Inova proposed to decommission one of several linear accelerators at its hospital in Fairfax, located within the same "planning district" as Fair Oaks Hospital.[7]

After Inova filed its application, Reston petitioned the Commissioner to make it a party to the case based on good cause pursuant to Code § 32.1-102.6(D) and (G). The Commissioner granted Reston's petition. Thereafter, the Commissioner, through an adjudication officer, considered evidence and arguments from Inova and Reston. The Commissioner also considered the recommendations of the regional health planning agency, the Department of Health's Division of Certificate of Public Need, and the adjudication officer.

Reston argued, among other things, that the certificate should not issue because the establishment of radiation therapy services at Inova's Fair Oaks Hospital would result in the reduced utilization and efficiency of the same, competing services Reston provides at its hospital just six miles away. Reston presented evidence that the geographic reach of its hospital and the competing radiation therapy services it provides substantially overlap with the reach of the same services Inova was seeking to provide under the certificate for public need. Reston further claimed that given its hospital's close proximity to Fair Oaks Hospital and the existence of doctors that shared privileges at both hospitals, Reston's services would inevitably suffer a reduction in utilization and efficiency, because patients diagnosed with cancer at Fair Oaks Hospital would rather remain at that hospital for treatment than go to Reston's nearby hospital.

Inova responded by arguing that issuance of the certificate under its current proposal would have little or no impact on the utilization and efficiency of Reston's radiation therapy

---

[6] A linear accelerator is a machine used to treat cancer.

[7] Virginia is divided into "health planning regions" and smaller "planning districts." See Code § 32.1-102.1; 12 VAC 5-220-10.

services based on a number of considerations, including the fact that Inova's proposal would not result in a net addition of a linear accelerator to the planning district. Inova also disputed Reston's analysis regarding patient choice, presenting evidence and otherwise arguing that any effect on the utilization and efficiency of its radiation therapy services would have little or no effect on the financial health of Reston's hospital.

The Commissioner decided to issue the certificate after reviewing the factors Code § 32.1-102.3(B) required her to consider. Notably, the Commissioner found the establishment of radiation therapy services at Fair Oaks Hospital would not significantly affect Reston's radiation therapy business or its broader healthcare business. She based this conclusion on her finding that only a small percentage of cancer cases arising at Fair Oaks Hospital were treated with radiation therapy services at Reston's hospital and that Reston was otherwise a "robust acute care facility." Thus, the Commissioner found that Reston "appears likely to weather any competitive stresses that may stem" from the issuance of the certificate.

Reston appealed the Commissioner's case decision to the circuit court, invoking the court's appellate jurisdiction under Code § 2.2-4026, the relevant section of the VAPA. Inova and the Commissioner subsequently filed a motion to dismiss the appeal, contending that Reston lacked standing to appeal because it was not sufficiently "aggrieved."[8] Reston's petition for appeal noted that Fair Oaks Hospital is about six miles from Reston's hospital[9] and that Reston provides the same services covered by the certificate. The petition also included allegations that the certificate would reduce the utilization and efficiency of its radiation therapy services, as

---

[8] The Commissioner also included a plea of sovereign immunity before the circuit court. Because the court resolved the case based on standing, the issue was never ruled upon, and thus we do not address it in this appeal.

[9] In some places, the record states that the distance between the two hospitals was "less than seven miles."

previously asserted in the administrative proceeding. Specifically, the petition alleges that:
(1) Reston is about six miles from Fair Oaks Hospital, resulting in a significant overlap in the service areas of the two hospitals such that 79% of Reston's 2008 radiation therapy patients fall under the service area of Inova's new project; (2) Reston estimates, based on internal company data, that it will lose 1,817 radiation therapy procedures, or 29% of its 2008 volume of those procedures; (3) Reston saw a 57% drop in its procedures on patients residing in Prince William and Fauquier Counties from 2006 to 2008, or a loss of 370 patients, when a competing cancer treatment facility opened 26.2 miles away in Manassas, which supports the notion that the loss from Inova's project would be even greater; (4) Inova projects that it will serve 240 patients and administer 5,000 procedures, but it currently has only 100 such patients referred for radiation therapy services authorized by the certificate; and (5) 44% of referrals for radiation therapy services to occur at Reston's hospital are made by doctors with privileges at Fair Oaks Hospital.

At a hearing on the motion to dismiss, Inova argued that because the Commissioner found that issuance of the certificate would not significantly affect Reston's competing business, it had not suffered an injury sufficient to make Reston aggrieved. The circuit court agreed, stating:

> At this point, I'm going to grant the motion to dismiss. I agree with the law as well as the practical aspects raised by [Inova and the Commissioner]. I have reviewed the entire record. I believe that's the basis for the Court's decision and based on the factors that the Commissioner considered and the deference that this Court believes it would be given, Reston cannot demonstrate . . . that [it was] sufficiently aggrieved to have standing.

Reston now appeals the circuit court's decision, opposed by both Inova and the Commissioner.

## II. ANALYSIS

Reston principally argues that it has standing to appeal the Commissioner's decision to the circuit court under the VAPA based on its status as a provider of the same, competing

services at a facility six miles from Fair Oaks Hospital, and the alleged impact on the utilization, efficiency, and ultimate profitability of those services resulting from increased competition with Fair Oaks Hospital. Reston reasons that this status makes it a "party aggrieved" under Code § 2.2-4026 because it places a burden on it different from that suffered by the public generally and shows that it has an immediate, pecuniary, and substantial interest in the case decision by virtue of the fact that Code § 32.1-102.3 required the Commissioner to consider the effect the issuance of the certificate would have on the utilization and efficiency of Reston's nearby, competing services that were the same as those to be provided by Inova under the certificate.

Neither the Commissioner nor Inova disputes that Reston owns a nearby facility that provides the same services covered by the certificate. Instead, they argue that Reston is not "sufficiently aggrieved" because in their view Reston has not suffered an appreciable injury, claiming that any harm to Reston's nearby, competing facility and services is insignificant. Inova supports this conclusion based on the evidence it presented to the Commissioner and the Commissioner's findings based on that evidence that Reston's hospital is a "robust, acute care facility" that "appears likely to weather any competitive stresses that may stem" from issuance of the certificate. Indeed, Inova and the Commissioner assert to us, as they did before the circuit court, that we must defer to the Commissioner's factual findings and conclude that Reston has not suffered any significant injury, which in turn means that it does not have standing.[10]

Counsel for the litigants in this case have ably briefed and argued the merits of their respective positions. Having fully considered those positions, we ultimately agree with Reston.

_____

[10] In her brief to this Court, the Commissioner asserts that only an applicant has standing to appeal the Commissioner's decision to the circuit court, writing, "Read literally and logically, [Code § 2.2-4026 provides that] only an applicant or a co-applicant for a [certificate] who has been denied a certificate or received only a partial certificate is aggrieved." However, she abandoned this position during oral argument, and thus we make no further mention of it in this opinion.

- 6 -

As we explain in further detail below, we hold that Reston has statutory standing as a "party aggrieved" pursuant to Code § 2.2-4026, and thus the trial court erred when it granted the motion to dismiss.

## A. Preliminary Considerations

"'Standing to maintain an action is a preliminary jurisdictional issue having no relation to the substantive merits of an action.'" Biddison v. Marine Res. Comm'n, 54 Va. App. 521, 527, 680 S.E.2d 343, 346 (2009) (quoting Andrews v. Am. Health & Life Ins. Co., 236 Va. 221, 226, 372 S.E.2d 399, 402 (1988)). Thus, in evaluating whether a party has standing, we are "not concerned with whether or not a party will ultimately prevail on the legal merits of an issue." Id. Rather, the only question is "the ability of a party to seek redress through the courts in the first place by demonstrating sufficient connection to, and actual or potential harm from, the law or action challenged." Id.

To determine who may appeal from a decision by the State Health Commissioner to issue a certificate of public need, we look to the VAPA. Health Sys. Agency of N. Va. v. Stroube, 47 Va. App. 299, 309, 623 S.E.2d 444, 449 (2005). "Under the Act, 'any person affected by and claiming the unlawfulness of any regulation, or party aggrieved by and claiming unlawfulness of a case decision . . . shall have a right to direct review thereof by . . . court action.'" Id. (quoting Code § 2.2-4026). Reston purports to be a "party aggrieved" challenging a case decision pursuant to the Act. Thus, we are presented with a question of statutory interpretation and, ultimately, a question of standing—a question of law that we review *de novo*. Va. Marine Res. Comm'n v. Clark, 281 Va. 679, 686-87, 709 S.E.2d 150, 154-55 (2011).

Accordingly, we must ask whether a party like Reston is one that the legislature intended to allow access to the courts in the licensing decision before us today. See Scott v. Commonwealth, 58 Va. App. 35, 48, 707 S.E.2d 17, 24 (2011) (noting that legislative intent

guides our interpretation of a statute). The plain language used by the legislature controls our decision, unless that language is ambiguous or otherwise leads to an absurd result. Id. Furthermore, to understand the legislature's intent, we must consider the entire statutory scheme enacted by the legislature on this particular subject. Alston v. Commonwealth, 274 Va. 759, 769, 652 S.E.2d 456, 461-62 (2007) ("'It is a cardinal rule of construction that statutes dealing with a specific subject must be construed together in order to arrive at the object sought to be accomplished.'" (quoting Prillaman v. Commonwealth, 199 Va. 401, 406, 100 S.E.2d 4, 7 (1957))). Finally, we presume that the legislature is aware of, and acquiesces to, our cases interpreting its enactments. Scott, 58 Va. App. at 49, 707 S.E.2d at 24 (citing Bell v. Commonwealth, 21 Va. App. 693, 699, 467 S.E.2d 289, 292 (1996)).

In light of these considerations, we begin with an overview of the administrative process for obtaining a certificate of public need created by the General Assembly. A person that wishes to provide certain medical services in the Commonwealth must first obtain a certificate from the State Health Commissioner. Code § 32.1-102.3(A). The Commissioner may not issue the certificate unless the person demonstrates a public need for the services. Id. "In determining whether a public need for a project has been demonstrated, the Commissioner *shall consider*" a number of factors, Code § 32.1-102.3(B) (emphasis added), among them "[t]he relationship of the project to the existing health care system of the area to be served, including *the utilization and efficiency of existing services and facilities*," Code § 32.1-102.3(B)(5) (emphasis added). The applicant is not the only person who is a party to the administrative proceeding. If an informal fact-finding conference is required, as it was in this case, then "the parties to the case shall include only the applicant, any person showing good cause, any third-party payor providing health care insurance or prepaid coverage to five percent or more of the patients in the applicant's service area, and the relevant health planning agency." Code § 32.1-102.6(D).

"Good cause" is not based upon who a party is, but rather whether the party demonstrates some error or deficiency in the administrative proceeding.[11] See Code § 32.1-102.6(G). A decision to issue or deny a certificate of public need is a "case decision" for the purpose of review. See Code § 32.1-4001 (defining "case decision" as including an agency proceeding or determination that a named party is or is not "in compliance with any existing requirement for obtaining or retaining a license or other right or benefit").

A "party aggrieved" by a case decision may appeal to the circuit court. Code § 2.2-4026. The term "aggrieved" has a well-established meaning in Virginia law. As the Supreme Court of Virginia recently explained in Clark, for a petitioner to be "aggrieved," he must show that he has

> "some direct interest in the subject matter of the proceeding that he seeks to attack. The petitioner must show that he has an immediate, pecuniary and substantial interest in the litigation, and not a remote or indirect interest. Thus, it is not sufficient that the sole interest of the petitioner is to advance some perceived public right or to redress some anticipated public injury when the only wrong he has suffered is in common with other persons similarly situated. The word 'aggrieved' in a statute contemplates a substantial grievance and means a denial of some personal or property right, legal or equitable, or imposition of a burden or obligation upon the petitioner different from that suffered by the public generally."

Clark, 281 Va. at 687, 709 S.E.2d at 155 (citations omitted) (quoting Va. Beach Beautification Comm'n v. Bd. of Zoning Appeals, 231 Va. 415, 419-20, 344 S.E.2d 899, 902-03 (1986)).

---

[11] Under Code § 32.1-102.6(G), a person seeking to become a party based on good cause must show that:

> (i) there is significant relevant information not previously presented at and not available at the time of the public hearing, (ii) there have been significant changes in factors or circumstances relating to the application subsequent to the public hearing, or (iii) there is a substantial material mistake of fact or law in the Department staff's report on the application or in the report submitted by the health planning agency.

## B. Reston Is Aggrieved

It is clear that, under Code § 2.2-4026, two things must be true for a person to appeal a case decision: the person must be a party to the administrative proceeding from which the case decision arises, and the person must be "aggrieved." Reston was plainly a party to the administrative proceeding in this case, and Inova and the Commissioner have not argued otherwise. Thus, the only question for us is whether Reston is aggrieved by the Commissioner's decision to grant Inova a certificate of public need.[12]

To be aggrieved, Reston must show that it has a direct interest in the Commissioner's decision to issue the certificate. See Clark, 281 Va. at 687, 709 S.E.2d at 155. In other words, it must show that it "'has an immediate, pecuniary and substantial interest in the litigation, and not a remote or indirect interest.'" Id. (quoting Va. Beach Beautification Comm'n, 231 Va. at 419-20, 344 S.E.2d at 902-03). Inova contends that Reston does not have such an interest because the Commissioner found as a matter of fact that the new radiation therapy services authorized by the certificate would not "'significantly' impact [Reston's] radiation therapy operations." Inova reasons that this finding of fact is binding on appeal, which in turn means that Reston has not suffered an injury sufficient to confer it with standing. Instead, Inova suggests that Reston's refuted allegations of significant injury on the merits of the licensing

---

[12] In addition to arguing that it has standing as an "aggrieved party," Reston also argues that it has standing simply because it was a good cause party to the administrative proceeding and that it argued against the issuance of the certificate to Inova. Relying on language this Court used in Laurels of Bon Air, LLC v. Med. Facilities of Am. LIV Ltd. P'ship, 51 Va. App. 583, 659 S.E.2d 561 (2008), Reston suggests that it is "a named, losing party before the Commissioner" entitled to judicial review under the VAPA. Because we narrowly hold that Reston is an "aggrieved party," we make no conclusions regarding this broader argument. See Morris v. City of Va. Beach, 58 Va. App. 173, 180, 707 S.E.2d 479, 482 (2011) (noting that this Court decides cases on "'the best and narrowest ground available'" (quoting Armstead v. Commonwealth, 56 Va. App. 569, 576, 695 S.E.2d 561, 564 (2010))).

decision mean that Reston is left with a "clearly speculative and conjectural" injury that is too "remote or indirect" to make Reston aggrieved.

Given this argument, it is apparent that what facts we use to evaluate whether a party is aggrieved, and how we view those facts, is vitally important. On a motion to dismiss an administrative appeal based on standing, where, as here, the circuit court has not taken any evidence on the allegations contained in the petition, "we treat the factual allegations in the petition as we do on review of a demurrer." Clark, 281 Va. at 686, 709 S.E.2d at 154. "A demurrer tests the legal sufficiency of facts alleged in pleadings, not the strength of proof." Glazebrook v. Bd. of Supervisors, 266 Va. 550, 554, 587 S.E.2d 589, 591 (2003). Thus, in reviewing the circuit court's conclusion on standing, "[w]e accept as true all facts properly pleaded in the [petition for appeal] and all reasonable and fair inferences that may be drawn from those facts." Id.; see also Chesapeake Bay Found., Inc. v. Commonwealth *ex rel.* State Water Control Board, 46 Va. App. 104, 109 n.1, 616 S.E.2d 39, 41 n.1 (2005) ("'For the purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.'" (quoting Concerned Taxpayers of Brunswick Cnty. v. Dep't of Envtl. Quality, 31 Va. App. 788, 796-97, 525 S.E.2d 628, 632 (2000))). It is incumbent upon the appellant to plead facts sufficient to demonstrate standing. See Chesapeake Bay Found., 46 Va. App. at 120, 616 S.E.2d at 47.[13]

---

[13] To the extent that this Court (or the circuit court) examines the record or other evidence to determine standing, it does so only to ascertain whether the allegations in the petition for appeal have some evidentiary support. See Chesapeake Bay Found., 46 Va. App. at 119-21, 616 S.E.2d at 46-48 (examining certain affidavits to determine whether the affidavits supported allegations in a petition for appeal *at all* or merely provided conclusory statements unsupported by express or implied factual claims within the affidavits).

Taking this procedural posture into account, we must recognize that we do not defer to the Commissioner's ultimate factual conclusions used to support her licensing decision. Those findings are separate from the legal inquiry involved in evaluating the sufficiency of the facts to prove standing, as those facts were pled in the petition to the circuit court. We only defer to the Commissioner regarding issues within her statutorily defined area of expertise. Laurels of Bon Air, LLC v. Med. Facilities of Am. LIV Ltd. P'ship, 51 Va. App. 583, 609, 659 S.E.2d 561, 574 (2008). Whether a party has standing to appeal to the circuit court is not such an issue. Rather, it is a legal issue to be reviewed *de novo*. Clark, 281 Va. at 686-87, 709 S.E.2d at 154-55. Furthermore, the circuit court was required to take the allegations as true, to the extent that those allegations were supported by the record. See Chesapeake Bay Found., 46 Va. App. at 109 n.1, 616 S.E.2d at 41 n.1; Glazebrook, 266 Va. at 554, 587 S.E.2d at 591. Thus, the Commissioner's conclusions regarding the allegations contained in the petition for appeal are immaterial to the standing inquiry, in both this Court and the circuit court below.

With that view of the facts in mind, we conclude that Reston's factual allegations are sufficient to give Reston standing to appeal any alleged errors made by the Commissioner as set forth in Code § 2.2-4026. We come to this conclusion based on Reston's relatively unique status and the statutory requirement that the Commissioner consider the effect her licensing decision might have on Reston in light of that status. Indeed, no one disputes that Reston provides the same services that Inova intends to establish at its Fair Oaks Hospital about six miles away and within the same planning district. This fact required the Commissioner to consider "[t]he relationship of the [establishment of radiation therapy services at Fair Oaks Hospital] to . . . the utilization and efficiency of [Reston's] existing services and facilities" in determining whether to issue Inova a certificate of public need. Code § 32.1-102.3(B)(5). Moreover, Reston's factual allegations, and the support found in the record for those allegations, demonstrate that Reston has

"sufficient connection to, and [has suffered] actual or potential harm from, the [Commissioner's decision to issue the certificate]," Biddison, 54 Va. App. at 527, 680 S.E.2d at 346, by plausibly alleging that its competing facility and services would suffer an appreciable reduction in utilization and efficiency.

We have previously held that when a statute requires an administrative agency to consider the effect a licensing decision may have on the interests of a class of persons before issuing the license, and a particular person falling within the class alleges injury from the decision, the person has a "direct and substantial interest" in the litigation that makes him aggrieved by the decision. Id. at 531, 680 S.E.2d at 348. In Biddison, several people who owned property adjacent to a marina sought to challenge in circuit court the Virginia Marine Resources Commission's decision to grant the marina a license to expand its operations. Id. at 524, 680 S.E.2d at 345. This Court held that the property owners had standing for two reasons. Id. at 529-31, 680 S.E.2d at 347-48. First, the Court held that the property owners' "rights as riparian landowners may have been adversely affected by [the Commission's] decision to grant" the license to the marina in light of the allegations and testimony of an adverse effect to their interests as riparian landowners. Id. at 529-30, 680 S.E.2d at 347-48. Thus, the owners were aggrieved by the decision because it conceivably denied them "'some personal or property right, legal or equitable.'" Id. at 529, 680 S.E.2d at 347 (quoting Bd. of Supervisors, 268 Va. at 449-50, 604 S.E.2d at 11). Second and more importantly, the Court further held that the property owners were aggrieved "simply by virtue of the fact that [the Commission] was required by statute 'to consider the project's effect' on their property prior to granting the [marina's] permit." Id. at 531, 680 S.E.2d at 348. Because a statute required the Commission to consider the interests of these particular individuals, and the alleged injury to their interests, the individuals had "a direct and substantial interest" in the litigation, id., or, in other words, they had "'an

- 13 -

immediate, pecuniary and substantial interest in the litigation,'" id. at 529, 680 S.E.2d at 347 (quoting Bd. of Supervisors, 268 Va. at 449-50, 604 S.E.2d at 11).

Like the statute in Biddison that required the Virginia Marine Resources Commission to consider the effect the licensing decision would have on particular property, Code § 32.1-102.3(B)(5) required the State Health Commissioner to consider the effect the issuance of the certificate to Inova would have on radiation therapy services provided nearby within the "area to be served."  In the administrative proceeding below, the Commissioner's opinion recognized that Inova's proposed expansion would have some effect on Reston's facility and services.  Although the Commissioner ultimately concluded that any potential harm to Reston did not justify denying the certificate to Inova, the impact that the issuance of the certificate could have on the utilization and efficiency of Reston's facility and services played a crucial part in the Commissioner's decision, as mandated under Code § 32.1-102.3(B)(5).

Inova and the Commissioner attempt to distinguish Biddison by bootstrapping an argument on the merits to the standing issue presented in this appeal.  They claim that the Commissioner made her decision based on an administrative regulation, 12 VAC 5-320-290 (also known as the "State Medical Facilities Plan"), and that pursuant to that regulation the Commissioner could not issue a certificate for a new radiation therapy service without finding that issuance of the certificate would not "significantly reduce[] the utilization of existing services," 12 VAC 5-230-290(C).  Based upon this regulation, Inova reasons that because the Commissioner issued the certificate, she found as a matter of fact that Reston would not suffer a significant injury, which Inova interprets as leaving only a "speculative and conjectural" injury insufficient to confer standing under the VAPA.  We disagree for several reasons.

First, this argument improperly conflates a significant reduction in the utilization and efficiency of Reston's facility and services with the substantial interest Reston has in those

services and a decision made in relation to those services. The "substantial" interest that Reston must have to make it "aggrieved" is not diminished by the fact that the Commissioner believes that Reston will not suffer a significant reduction in the utilization and efficiency of its facility and services, or synonymously, that the Commissioner believes that Reston will not suffer a significant monetary loss. Even if we assume that the extent of the monetary loss to Reston's business is relatively small,[14] that does not mean that its interest in the Commissioner's decision is any less substantial for standing purposes. The substantiality of Reston's interest in the Commissioner's decision derives from the directive set forth in Code § 32.1-102.3(B)(5) requiring the Commissioner to *consider* the effect her licensing decision *might* have on Reston's business.[15] Once Reston had brought to the Commissioner's attention plausible evidence of appreciable harm to the utilization and efficiency of its facility and services, the Commissioner was required to weigh that evidence in its determination and the Commissioner was required to

---

[14] We do not necessarily agree that the Commissioner actually found that Reston would not have lost a significant amount of money from the establishment of radiation therapy services at Fair Oaks Hospital. Rather, the finding made by the Commissioner was that Reston is a "robust acute care facility" that would likely "weather any competitive stresses that may stem" from Inova's project. In other words, the Commissioner acknowledged that Reston could or would lose patients for its radiation therapy services and thus suffer a decrease in the utilization and efficiency of those services, but because of its size would be able to adjust its business within the competitive marketplace.

[15] Inova argues that "*potential* loss of business opportunity is not a sufficient basis" to make Reston aggrieved, citing to Ridge Gen. Hosp., Inc. v. NME Hosp., Inc., 478 So. 2d 1138 (Fla. Dist. Ct. App. 1985), and W. Cnty. Care Ctr., Inc. v. Mo. Health Facilities Review Comm., 773 S.W.2d 474 (Mo. Ct. App. 1989), for support. This argument is misplaced. In this opinion, we do not reach the question of whether any real or perceived economic injury to Reston, standing alone, is sufficient to make Reston aggrieved. Rather, we conclude that any real or perceived economic interest that Reston has stems from its status as an established, nearby provider of the same services Inova seeks to establish at its Fair Oaks Hospital. Thus, we do not rely on Reston's economic interest standing alone, but rather the statutory factor the Commissioner must consider, which directly implicates Reston and its economic interest.

- 15 -

consider potential harm to Reston.  Thus, Reston had a direct and substantial interest in the

Commissioner's decision to grant or deny a certificate of need to Inova.[16]

Further, a contrary holding by this Court would frustrate the apparent purpose of the

legislature in creating court review of the Commissioner's decision to grant or deny a certificate

of public need.  It is clear that the legislature created the procedure for appellate review set forth

in Code § 2.2-4026 to check against "unlawful[]" administrative decisions—that is, it created the

procedure to correct errors of law made by an administrative agency.  If we were to adopt Inova

and the Commissioner's interpretation, we would necessarily prevent the potential correction of

legal errors made by the Commissioner.  Under their interpretation, an applicant can appeal a

decision to deny a certificate in order to correct an error of law, but a party aggrieved by a

decision to grant a certificate will hardly ever be able to appeal a decision to grant a certificate in

order to correct an error of law.  Indeed, the Commissioner could purposely immunize herself

from appellate review if she so desired.  See Richard J. Pierce, Administrative Law Treatise

1504-05 (5th ed. 2010) ("Judicial reliance on agency findings of fact relevant to standing would

provide agencies an easy means of insulating from judicial review a high proportion of their

actions.").

Since the legislature intended to use the appellate process to correct any legal errors made

by the Commissioner in deciding to grant or deny a certificate of public need, it follows that the

legislature intended to allow a party to challenge an unlawful factual conclusion.[17]  Of course,

whether Reston can succeed on the merits of its challenge is a separate matter.  Ultimately,

---

[16] Had Reston brought mere *de minimus* concerns related to its existing facility or services, we might be presented with a different case.

[17] In fact, it seems that Inova and the Commissioner would have no issue with a losing applicant challenging the unlawfulness of a factual conclusion drawn by the Commissioner in a certificate of public need decision.

- 16 -

however, it seems quite logical that the legislature had in mind that a party with an immediate, pecuniary, and substantial interest like Reston would be the only one with a sufficient interest necessary to bring to the attention of the circuit court errors of law made by the Commissioner in granting a certificate. The same has already been said in related contexts. See, e.g., FCC v. Sanders Bros. Radio Station, 309 U.S. 470, 477 (1940) (recognizing that by allowing "any person aggrieved" to challenge in court a decision by the Federal Communication Commission to grant a radio broadcaster a license, Congress "may have been of the opinion that one likely to be financially injured by the issue of a license would be the only person having a sufficient interest to bring to the attention of the appellate court errors of law in the action of the Commission in granting the license"); In re Lappie, 377 A.2d 441, 442-43 (Me. 1977) (reasoning that by allowing a "person aggrieved" to appeal a decision of an administrative agency, it is "obvious that the legislative rationale is that one who is adversely affected by the entry of an administrative order" is "more likely to seek judicial review to assure that the administrative body acts consistently with the standards prescribed by the statute").

It is true that Reston must present something more than a conjectural injury, and it has done so here. We are not presented here with a case where some person virtually indistinguishable from the public has presented some fleeting, theoretical injury. See, e.g., Lujan v. Defenders of Wildlife, 504 U.S. 555, 563-64 (1992) (where certain citizens lacked standing to challenge regulations concerning endangered species based on the bald assertion that the citizens "hoped" to see these species at some uncertain point in the future). Rather, this case presents us with very real, concrete allegations of harm to a person whose distinctive status makes it an integral part of the decision made by the Commissioner. Reston has put forth some evidence in support of those allegations. In the administrative proceeding below, although the certificate issued, the effect on the utilization and efficiency of Reston's services was an important

- 17 -

consideration by the Commissioner. The Commissioner considered the effect that the establishment of radiation therapy services would have on a nearby provider of the same services—Reston—and the Commissioner concluded that the factors weighed in favor of issuing the certificate. Reston's distinctive status as a nearby provider of the same services made it a focus of special consideration by the Commissioner as required under Code § 32.1-102.3(B), and it is "by virtue of this fact," <u>Biddison</u>, 54 Va. App. at 531, 680 S.E.2d at 348, that Reston has a direct and substantial interest in the licensing decision by the Commissioner.

## III. CONCLUSION

Based on the foregoing reasons, we conclude that Reston has statutory standing to appeal to the circuit court the Commissioner's decision to grant Inova a certificate of public need and to challenge the unlawfulness of that decision as set forth in the Virginia Administrative Process Act. Therefore, we reverse and remand.

<u>Reversed and remanded.</u>