COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Huff,[*] Judges Alston and Chafin
Argued at Alexandria, Virginia

MARK HOLMES

MEMORANDUM OPINION[**] BY
v.      Record No. 2091-13-4          JUDGE ROSSIE D. ALSTON, JR.
                                              JANUARY 27, 2015

CULVER DESIGN BUILD, INC. AND
  VIRGINIA BOARD FOR CONTRACTORS

FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
James C. Clark, Judge

Mark Holmes, *pro se*.

Monique A. Miles (Old Towne Associates, P.C., on brief), for
appellee Culver Design Build, Inc.

James M. Flaherty, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee Virginia Board for
Contractors.

Mark Holmes challenges the circuit court's final order dismissing his appeal of the Board

for Contractors' (Board) decision denying him standing as a party in a disciplinary proceeding

against Culver Design Build, Inc. ("Culver"). On appeal, Holmes contends that the circuit court

erred in finding that he failed to present facts sufficient to establish that he was aggrieved by the

Board's decision not to conditionally revoke Culvers' license and, accordingly, denying Holmes'

claim to standing as a party before the Board. For the reasons that follow, we affirm the trial

court.

---

[*] On January 1, 2015, Judge Huff succeeded Judge Felton as chief judge.

[**] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I. Background[1]

Fifteen years ago, Culver entered into a contract to construct a three-bedroom addition to a residence in Alexandria, Virginia. Culver acquired the necessary building permits and constructed the addition, but did not obtain a final inspection of the addition by the Alexandria City Code Administration ("City Code Administration"). Two years after the addition was constructed, Holmes and his wife purchased the property.

In November 2003, when Holmes came to suspect that the addition was improperly constructed, he requested an inspection by the City Code Administration. The inspection revealed "extensive water damage" in the addition caused by construction "deficiencies" that allowed water to infiltrate from the walls and roof of the addition. Because Culver had failed to obtain a final inspection of the addition upon its completion, as required by the Uniform Statewide Building Code, the City Code Administration informed Culver that it remained responsible for correcting these deficiencies. The City Code Administration thereafter issued a notice of violation to Culver and informed Culver that failure to abate the existing violations would result in the matter being referred to the Alexandria City Attorney for legal action.

Seemingly accepting its responsibility to correct the violations, Culver obtained a permit to abate the violations. But when Culver and Holmes could not agree how to correct the violations, the project stalled. Years passed without any work on the addition ever having been conducted. And worse, because corrective measures were not taken during that time, the condition of the property worsened.

---

[1] As the parties are fully conversant with the record in this case and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

In July 2009, the City Code Administration prepared a notice of inspection that identified violations in addition to those observed in 2004.[2] As before, the City Code Administration issued a notice of violation against Culver. The City Code Administration also requested in writing that the City Attorney institute legal proceedings against Culver.

The City Attorney declined the City Code Administration's request to take any legal action against Culver. Although Culver was initially responsible for constructing the addition to code, at the time of the City Code Administration's request, ten years had elapsed since the violations were first observed, and in the absence of any effort by Holmes to mitigate his damages, the City Attorney questioned which party should be held responsible.

Notwithstanding these questions as to which party should be held responsible, the City Attorney wrote to Holmes in November 2011, "request[ing] an inspection of [his] property for the purpose of determining the condition of the rear addition as it relate[d] to compliance with the Virginia Maintenance Code." The letter requested that Holmes permit an inspector on the property and that Holmes provide "a written work plan spelling out how [he] intend[ed] to proceed with repair or replacement of the addition with benchmark dates for plan/permit resubmission, proposed timing of construction start and construction completion." In effect, the City Attorney assigned to Holmes the obligation to abate the violations extant in the addition Culver constructed.

---

[2] Although the City Code Administration inspected the residence at Holmes' request, Holmes appealed the issuance of the notice of inspection to the Alexandria Building Code Board of Appeals ("BCBA"). The BCBA held that the City Code Administration was required to issue the notice of inspection to Culver as a notice of violation. The BCBA also held that the City Code Administration must request in writing that the City Attorney institute legal proceedings against Culver. The City Code Administration appealed the BCBA's decision to the State Technical Review Board, which affirmed the BCBA.

In December 2011, in an effort to "spur Culver to remedy the violations," Holmes filed a complaint against Culver with the Board, requesting that Culver's "[Class A contractor] license not be renewed and that [Culver] be disciplined for" failing to abate existing code violations. The Board addressed the disciplinary action during a regularly scheduled meeting on July 31, 2012. At that time, the Board voted to remand the matter to an informal fact-finding conference to collect additional information and to permit Holmes an opportunity to show why he should be added as a party to the disciplinary proceeding, as he previously requested.

Following the conference, the Board's presiding officer issued a written recommendation that Holmes not be granted party status. The recommendation explained that "the relief Holmes [sought] exceed[ed] the Board's regulatory authority." While the Board could "take disciplinary action against a licensee when it fail[ed] to abate a violation," the Board could not "require the licensee to abate [the] violation." Because it was clear that Holmes "[sought] to dictate to the Board a specific outcome" that exceeded the Board's regulatory authority, "namely to leverage the potential revocation of Culver['s] . . . license to force it to abate the building code violations," the presiding officer recommended that Holmes' request to be added as a party be denied. The presiding officer also recommended a $500 fine against Culver for its failure to abate violations at the property at issue. With minor modifications, the Board entered a final order adopting the summary of the fact-finding conference.[3]

Holmes then appealed the Board's finding to the circuit court. Holmes alleged that the Board erred as a matter of law by denying him standing as a party. Holmes asserted that the Board's failure to conditionally revoke Culver's license until Culver abated the existing

---

[3] The Board's final order found substantial evidence that Culver violated 18 VAC 50-22-260(B)(25) by failing to abate violations at Holmes' residence. The Board voted to impose a $2,500 fine and ordered that Culver "have a member of [its management] successfully complete a Board-approved remedial education class."

violations saddled Holmes with the substantial cost of correcting the deficiencies, since the City Attorney previously threatened to pursue legal action against Holmes if the violations were not corrected. Appellees demurred to Holmes' petition for appeal and moved to dismiss his appeal, arguing that Holmes was not aggrieved by the Board's decision and therefore lacked standing to appeal. After reviewing the parties' motions and the supporting memorandum, the circuit court entered a final order sustaining appellees' demurrers and dismissing Holmes' appeal.

This appeal followed.

## II. Analysis

### A. Standard of Review

"On a motion to dismiss an administrative appeal based on standing, . . . 'we treat the factual allegations in the petition as we do on review of a demurrer.'" Reston Hosp. Cntr. LLC. v. Remley, 59 Va. App. 96, 109, 717 S.E.2d 417, 424 (2011) (quoting Clark v. Commonwealth, 281 Va. 679, 686, 709 S.E.2d 150, 154 (2011)). Accordingly, "'[w]e accept as true all facts properly pleaded in the [petition for appeal] and all reasonable and fair inferences that may be drawn from those facts.'" Id. (quoting Glazebrook v. Bd. of Supervisors, 266 Va. 550, 554, 587 S.E.2d 589, 591 (2003)). Whether the factual pleadings are sufficient to establish standing is a matter of law that we review *de novo*. Id. at 106, 110, 717 S.E.2d at 422, 424 (stating that "[i]t is incumbent upon the appellant to plead facts sufficient to demonstrate standing").

### B. Standing

"'Standing to maintain an action is a preliminary jurisdictional issue having no relation to the substantive merits of an action.'" Reston Hosp. Cntr., 59 Va. App. at 105, 717 S.E.2d at 422 (quoting Biddison v. Marine Res. Comm'n, 54 Va. App. 521, 527, 680 S.E.2d 343, 346 (2009)). Accordingly, "in evaluating whether a party has standing, [this Court is] 'not concerned with whether or not a party will ultimately prevail on the legal merits of an issue.'" Id. Instead, "the

only question is 'the ability of the party to seek redress through the courts in the first place by demonstrating sufficient connection to, and actual or potential harm from, the law or action challenged.'" Id. To determine who may appeal from a decision of the Board, we first look to the Virginia Administrative Process Act.

Under the Act, any party aggrieved by a case decision has a right to direct review of that decision by court action. See Code § 2.2-4026. But while the Act authorizes parties to challenge the lawfulness of an administrative case decision, nonparties are limited to appeals regarding "the agency's decision to *exclude* them from participating in the administrative process." Laurels of Bon Air, LLC v. Med. Facilities of America, 51 Va. App. 583, 591, 659 S.E.2d 561, 565 (2008) (emphasis in original) (citations omitted). In other words, nonparties may challenge only "whether the agency properly refused to recognize [their] 'standing' to intervene and thereby acquire party status." Id. "Whether an agency correctly refused to recognize the standing of a putative intervenor depends on the criteria for standing, if any, adopted by the underlying administrative statute, the 'basic law' as Code § 2.2-4001 calls it." Id. Accordingly, the traditional analytical framework for addressing issues of standing contains another layer of inquiry.

Code § 54.1-109 provides the basic law guiding this appeal. It states, in relevant part,

> *Any person* who has been *aggrieved* by any action of the Department of Professional and Occupational Regulations . . . [or] any regulatory board within the Department[, including the Board for Contractors,] . . . shall be entitled to a review of such action.

(Emphasis added).

"'The word "aggrieved" in a statute, it has been held, refers to a substantial grievance, a denial of some personal or property right, legal or equitable, or the imposition upon a party of a burden or obligation.'" D'Alessio v. Lukhard, 5 Va. App. 404, 408, 363 S.E.2d 715, 718 (1988)

- 6 -

(quoting Insurance Assoc. v. Commonwealth, 201 Va. 249, 253, 110 S.E.2d 223, 226 (1959); VEC v. City of Virginia Beach, 222 Va. 728, 732, 284 S.E.2d 595, 597 (1981)). Stated another way, a petitioner must show "'some direct interest in the subject matter of the proceeding that he seeks to attack. The petitioner must show that he has an immediate, pecuniary and substantial interest in the litigation, and not a remote or indirect interest.'" Reston Hosp. Cntr., 59 Va. App. at 108, 717 S.E.2d at 423 (quoting Va. Marine Res. Comm'n v. Clark, 281 Va. 679, 687, 709 S.E.2d 150, 155 (2011)).

In his brief, Holmes contends that the circuit court erred in dismissing his petition for appeal because he pleaded facts supported by the administrative record that demonstrate he was aggrieved by an action of the Board. According to Holmes, he has "pleaded that he owns the home where Culver committed the violations of the Building Code that he refuses to abate; that the City Code Administrator has threatened Holmes with the duty of correcting them himself since Culver refuses to do so; and that the cost of doing so is substantial." Holmes contends that the Board's refusal to discipline Culver as severely as Holmes requested "will saddle Holmes . . . with the exorbitant cost of fixing the . . . violations cited to Culver." This effect of the Board's decision is not suffered by the public generally, Holmes contends, but instead is an "immediate, pecuniary, and substantial" effect that "fall[s] on [him] alone." We disagree.

We find the analytical framework of D'Alessio, 5 Va. App. 404, 363 S.E.2d 715, instructive in reaching our conclusion. In that case, we considered whether the "father of an allegedly sexually abused child[] had standing [to challenge] . . . the ruling of the Commissioner of Social Services that expunged the name of the suspected abuser from the central registry for child abuse and neglect." Id. at 405, 363 S.E.2d at 716. Accepting without question the father's "understandable interest" in the alleged perpetrator's name being removed from the registry, we nevertheless concluded that such an interest "was not a legal interest sufficient . . . to give him

standing." Id. at 407, 363 S.E.2d at 717. Reaching that conclusion, we explained that an aggrieved party is one with "a substantial grievance," such as one who has been denied a personal or property right or one upon whom a burden or obligation has been imposed. Id. at 407, 363 S.E.2d at 718. As we explained, the father in D'Alessio suffered no such grievance:

> In the [administrative] proceedings below, the only issue was whether [the alleged perpetrator's] name should remain on the record. This was not a proceeding to determine [the alleged perpetrator's] guilt or innocence. The proceeding in no way affected the father's rights to pursue other means of direct relief. He could have petitioned the Juvenile and Domestic Relations Court to prosecute, or he could have sought injunctive relief. These and other rights he may have had were not affected by the Commissioner's expungement of the [alleged perpetrator's] name.

Id. at 408, 363 S.E.2d at 717-18.

Like the father in D'Alessio, Holmes' claim does not come within the meaning of "aggrieved" stated above because the Board's limited, disciplinary proceeding neither denied Holmes a "'personal or property right'" nor imposed upon Holmes a "'burden or obligation.'" Id. at 408, 363 S.E.2d at 718 (quoting Insurance Assoc., 201 Va. at 253, 110 S.E.2d at 226). In the proceeding below, the only issue before the Board was whether Culver committed a prohibited act that warranted discipline under the regulations governing licensed contractors. It was not a proceeding to determine who was responsible for correcting the violations observed in Holmes' residence.

That issue exceeded the Board's authority. The Board was not authorized to enforce the Uniform Statewide Building Code, require Culver to abate existing violations, or award Holmes a personal remedy for the violations committed by Culver. See 18 VAC 50-22-200 (stating that the Board may require remedial education, revoke or suspend a license, or impose a fine when a licensee violates any regulation of the Board). Holmes acknowledged as much when he signed and filed with the Board a complaint form that stated in bolded and underscored text that the

Board has no "authority to require a licensee to return money, correct deficiencies, or provide other personal remedies." Because the proceeding concerned only Culver – namely, the discipline its prohibited acts warranted under the regulations – "[Holmes] was denied no personal or property rights and no burden or obligation was imposed upon him." D'Alessio, 5 Va. App. at 408, 363 S.E.2d at 718.

Notwithstanding the limited nature of the disciplinary hearing, Holmes contends that he was aggrieved because the Board's "refusal to discipline Culver as severely as its 'prohibited act' deserve[d] will saddle Holmes . . . with the exorbitant cost of fixing the . . . violations cited to Culver." But whether Holmes will be saddled with such costs hardly follows from the outcome of the Board's disciplinary proceeding. As Holmes notes on brief, it was the City Code Administration that threatened Holmes – months before he filed his complaint with the Board – with the duty of correcting the violations. And the City Code Administration alone is authorized to enforce the building code. The proceeding before the Board in no way affected Holmes' right to pursue direct relief with the City Code Administration.

Moreover, even if a more severe disciplinary penalty may have incentivized Culver to abate the existing violations by, for example, tying renewal of Culver's license to correction of the violation, such an indirect interest in the subject matter of the proceeding falls short of the criteria for standing. As we have expressed before, to demonstrate standing a petitioner must show a "'direct interest in the subject matter of the proceeding.'" Reston Hospital Cntr., 59 Va. App. at 108, 717 S.E.2d at 423. Holmes' desire for a specific outcome that he could use to leverage Culver to do what the Board could not expressly direct – i.e., to force Culver to abate the building code violations – does not demonstrate a direct interest in the litigation before the Board. Accordingly, while we do not doubt that Holmes "'ha[d] an immediate, pecuniary and substantial interest'" in seeing Culver held responsible for the violations, that interest was not

- 9 -

related to the proceeding before the Board.  See id. (quoting Clarke, 281 Va. at 687, 717 S.E.2d at 155).

## III.  Conclusion

For the foregoing reasons, we affirm the decision of the circuit court dismissing Holmes' petition for appeal.

Affirmed.