724 S.E.2d 216

## MUSE CONSTRUCTION GROUP, INC.

v.

## COMMONWEALTH OF VIRGINIA BOARD FOR CONTRACTORS and Warren and Beverly Wharton.

### Record No. 1134–11–2.

Court of Appeals of Virginia,
Richmond.

May 1, 2012.

Petty, J., filed a dissenting opinion.

George H. Dygert (Dygert, Wright, Hobbs & Heilberg, PLC, on briefs), Charlottesville, for appellant.

Steven P. Jack, Assistant Attorney General (Kenneth T. Cuccinelli, II, Attorney General, on brief), for appellee Commonwealth of Virginia Board for Contractors.

No brief or argument for appellees Warren and Beverly Wharton.

Present: Judges PETTY, BEALES and HUFF.

HUFF, Judge.

Muse Construction Group, Inc. ("appellant") appeals the Circuit Court of Albemarle County's ("circuit court") decision dismissing appellant's appeal of a final decision of the Commonwealth of Virginia Board for Contractors ("Board"). On appeal, appellant contends that the circuit court erred in finding that its petition for appeal was not served on the Secretary of the Board ("agency secretary") in accordance with the Rules of the Supreme Court of Virginia. For the following reasons, we reverse and remand.

## I. BACKGROUND

The facts relevant to this appeal are as follows. After conducting an investigation, holding an informal fact-finding conference, and reporting its findings relating to alleged violations resulting from appellant's contract to build a house, the Board entered a final order and opinion revoking appellant's contracting license on September 21, 2010.

On October 22, 2010, appellant timely filed a notice of appeal with the Board. On November 10, 2010, appellant timely filed a petition for appeal with the circuit court and mailed a copy of the petition by certified mail to the agency secretary, which the agency secretary received on November 12, 2010.

On February 7, 2011, appellant received a copy of the Board's special plea in bar for lack of jurisdiction, in which the Board contended that appellant had not properly served the agency secretary in accordance with Rule 2A:4. On February 8, 2011, appellant contacted the clerk of the circuit court and requested that the circuit court provide service of appellant's petition for appeal on the agency secretary, which the agency secretary received on February 25, 2011.

On March 3, 2011, the Board filed a motion to dismiss with the circuit court alleging appellant failed to take the necessary steps to perfect service on the agency secretary within the thirty-day period prescribed by Rule 2A:4. On May 31, 2011, the circuit court dismissed the case for "failure to take the

steps required by Rules 3:2, 3:3 and 3:4 of the Rules of the Supreme Court of Virginia for filing and service of a complaint to commence a civil action to have the petition for appeal served with process upon the agency secretary ... as required by Rule 2A:4(a)...." This appeal followed.

## II. STANDARD OF REVIEW

■ In reviewing the circuit court's interpretation of the Rules of the Supreme Court of Virginia, we apply a *de novo* standard of review. *See Va. Ret. Sys. v. Avery*, 262 Va. 538, 543, 551 S.E.2d 612, 615 (2001).

## III. ANALYSIS

■ Appellant contends that the circuit court erred in dismissing its appeal for lack of jurisdiction after finding that the petition for appeal was not served on the agency secretary in accordance with Rule 2A:4. Appellant further asserts that Code § 8.01–288 cures any defect in service because the agency secretary received the petition for appeal within the prescribed time period. Because we agree with appellant's contention that its service by certified mail of the petition for appeal satisfied the requirements of Rule 2A:4, we do not reach appellant's argument for the application of Code § 8.01–288.

Rule 2A:4 provides, in pertinent part, that

[w]ithin 30 days after the filing of the notice of appeal, the appellant shall file a petition for appeal with the clerk of the circuit court named in the first notice of appeal to be filed. Such filing shall include within such 30–day period both the payment of all fees and the taking of all steps provided in Rules 3:2, 3:3 and 3:4 to cause a copy of the petition for appeal *to be served (as in a civil action)* on the agency secretary and on every other party.

(Emphasis added).

Rule 2A:4 requires a party seeking an appeal in the circuit court "to cause a copy of the petition for appeal to be served

(as in a civil action) on the agency secretary and on every other party"—*not* "to cause a copy of the petition for appeal to be served (as in *the case of a bill of complaint in equity* )," as it did prior to its amendment in 2006. Rule 2A:4 (1977) (amended 2006). A bill of complaint in equity was the initial pleading used to institute a new action in chancery, and therefore required service of initial process by a process server. Thus, in applying Rule 2A:4 prior to its amendment, the practice was to require service of process on the agency secretary in the form of a subpoena in chancery affixed to a copy of the filed petition for appeal, served by a process server.[1] *Bendele v. Commonwealth,* 29 Va.App. 395, 399, 512 S.E.2d 827, 829 (1999). *See generally Kessler v. Smith,* 31 Va.App. 139, 521 S.E.2d 774 (1999).

In conjunction with the merger of law and equity in 2006, the amendment to Rule 2A:4 removed the requirement that service of the petition for appeal comply with the same procedural formalities as would apply to the institution of a new action. Rule 2A:4 (1977) (amended 2006). Because the Supreme Court "is presumed to be aware of the decisions of this Court" that addressed Rule 2A:4 prior to its amendment, *Waterman v. Halverson,* 261 Va. 203, 207, 540 S.E.2d 867, 869 (2001) (citation omitted), and is presumed to have "chose[n] with care the words it used," *Saunders v. Commonwealth,* 48 Va.App. 196, 203, 629 S.E.2d 701, 704 (2006), we find that the Supreme Court specifically chose to amend Rule 2A:4 to require that "service" be "as in a civil action." Further, the Supreme Court's choice of words evidences a departure from the prior practice that service by a process server be performed "as in the case of a bill of complaint in equity." Rule 2A:4 (1977) (amended 2006); *see Kessler,* 31 Va.App. at 144,

---

1. Rule 2A:4 adopts by reference Rules 3:2, 3:3, and 3:4, and directs that they be used "to cause a copy of the petition for appeal to be served (as in a civil action) on the agency secretary...." Rule 2A:4 imposes no requirement for issuance of a summons or process. Even if such were required, Rule 3:2(c)(i) delegates such duty to the clerk of the circuit court. *Kessler v. Smith,* 31 Va.App. 139, 144, 521 S.E.2d 774, 776 (1999).

521 S.E.2d at 776 (" 'Where the language of a [rule] is clear and unambiguous, we are bound by the plain statement of ... intent.' " (citation omitted)); *see also* Code § 8.01–3. Thus, the Supreme Court plainly removed the requirement that an agency secretary be served by a process server on an appeal of an administrative agency's case decision.[2]

Because the amendment changed the service requirement to conform to the general rules applicable "in a civil action," it follows that "service" can be accomplished pursuant to Rule 1:12 if the parties are already at issue by the time an appeal is made to the circuit court. *See Avery*, 262 Va. at 543 n. 2, 551 S.E.2d at 614 n. 2 (declining to address whether service conformed to the amended language of Rule 1:12, which allows for delivery by a commercial delivery service, given that service had occurred prior to the amendment). In the case at bar, the parties had been at issue for months prior to appellant's appeal to the circuit court. Rule 2A:4 therefore does not require service of process—i.e. a summons, affixed to the petition for appeal, served by a process server—as would be

---

**2.** The rules governing appeals pursuant to the Virginia Administrative Process Act ("VAPA") are promulgated pursuant to Code § 2.2–4026. Rule 2A:1(a). In drafting the Rules, the Supreme Court referred to the review of an agency's case decision as a "direct appeal." Rule 2A:1(a); *see* Rules 2A:2, 2A:3 and 2A:4 (providing for a notice of appeal, a petition for appeal, and a record on appeal); *see also J.P. v. Carter*, 24 Va.App. 707, 721, 485 S.E.2d 162, 169 (1997) (noting that the circuit court reviews an agency's case decision in a manner " 'equivalent to an appellate court's role in an appeal from a trial court,' " and thus, " '[i]n this sense, the General Assembly has provided that a circuit court acts as an appellate tribunal' " (quoting *Sch. Bd. v. Nicely*, 12 Va.App. 1051, 1062, 408 S.E.2d 545, 551 (1991))). Neither the Rules nor the statute express that such an appeal is a new action. Accordingly, the plain meaning of the Rules, read in concert with VAPA, distinguishes a direct review of an agency's case decision from a new action, which would require service by a process server.

The dissent has expressed concern that our reading of Code § 2.2–4026 as it applies to the review of an agency's case decision may create a "procedural nightmare" in adjudicating reviews of the adoption of a regulation under the same statutory provision. Infra at 110, 724 S.E.2d at 225. Our holding, however, is limited to the context of an agency's case decision where the parties are already at issue.

needed to *institute a new* action. Accordingly, we find Rule 1:12 applicable in this case.

Rule 1:12 provides, in pertinent part, that

[a]ll pleadings, motions and other papers not required to be served otherwise and requests for subpoenas duces tecum shall be served by delivering, dispatching by commercial delivery service, transmitting by facsimile, delivering by electronic mail when Rule 1:17 so provides or when consented to in writing signed by the person to be served, or by mailing, a copy to each counsel of record on or before the day of filing.

In this case, appellant timely filed a petition for appeal with the circuit court on November 10, 2010. On the date of filing, appellant also mailed a copy of the petition to the agency secretary by certified mail. The agency secretary received a copy of appellant's petition for appeal on November 12, 2010. Because Rule 2A:4 does not require that the petition for appeal be served by a process server, we conclude that appellant complied with Rule 2A:4 by serving a copy of the petition on the agency secretary pursuant to Rule 1:12 within the prescribed time period. Further, it does not appear from the record before us on appeal that any required fees went unpaid or that any steps required in Rules 3:2, 3:3, and 3:4 were not taken during that thirty-day period. *See* Rule 2A:4 (requiring "within such 30–day period both the payment of all fees and the taking of all steps provided in Rules 3:2, 3:3 and 3:4 to cause a copy of the petition for appeal to be served (as in a civil action) on the agency secretary and on every other party"). Therefore, the circuit court erred in ruling that it was divested of jurisdiction over the appeal.

## IV. CONCLUSION

Because we find that appellant complied with the requirements for serving its petition for appeal on the agency secretary pursuant to Rule 2A:4, we hold that the circuit court erred in ruling that it was divested of jurisdiction over the appeal. Accordingly, we reverse the circuit court's decision

and remand the case to the circuit court for proceedings consistent with this opinion.

*Reversed and remanded.*

PETTY, J., dissenting.

Muse presents a simple, direct issue to this Court on appeal: whether the mailing, by certified mail, of a copy of the petition for appeal to the secretary of the Board of Contractors constituted service under Rule 2A:4 of the Rules of Court.[3] The underlying premise of the majority's affirmative conclusion is that the 2006 amendment to Rule 2A:4 was a substantive amendment intended to fundamentally change the nature

---

3. I do not believe this Court should address anything beyond the narrow question of whether mailing the petition for appeal to the agency secretary is sufficient to have the petition "served" on the secretary in compliance with Rule 2A:4. That is the only argument that Muse raised in the proceeding below, as exemplified by Muse's memorandum in opposition to the Board's motion to dismiss. In the proceeding below, Muse never raised the issue of whether it had otherwise cured defective service under Code § 8.01–288, or whether filing the petition for appeal within the thirty-day time period set forth in Rule 2A:4 was sufficient to comply with the rule, as discussed in *Kessler v. Smith*, 31 Va.App. 139, 144–45, 521 S.E.2d 774, 776 (1999) (holding that the filing of a petition for appeal in that window, without more, was sufficient to comply with a previous version of Rule 2A:4). Thus, we are barred from reviewing these issues on appeal under Rule 5A:18. *Ohree v. Commonwealth*, 26 Va.App. 299, 308, 494 S.E.2d 484, 489 (1998).

Additionally, Muse has not adequately raised these issues before us on appeal. Besides a simple quotation of Code § 8.01–288, Muse does not explain the application of Code § 8.01–288 to the facts of this case in its brief. That omission is significant. Muse does not suggest that it cured its defective service, or that it otherwise complied with Rule 2A:4, the issue of proper service aside. Muse raises only the issue of whether its mailing was proper service on the agency secretary. Accordingly, Rule 5A:20(e) precludes this Court from addressing any issue beyond this narrow one. *See Fadness v. Fadness*, 52 Va.App. 833, 850, 667 S.E.2d 857, 865–66 (2008) (Under Rule 5A:20(e), " '[a] court of review is entitled to have the issues clearly defined and to be cited pertinent authority. The appellate court is not a depository in which the appellant may dump the burden of argument and research.' " (quoting *People v. Trimble*, 181 Ill.App.3d 355, 130 Ill.Dec. 296, 537 N.E.2d 363, 364 (1989))); *see also Atkins v. Commonwealth*, 57 Va.App. 2, 20, 698 S.E.2d 249, 258 (2010) (holding that a significant omission with respect to Rule 5A:20(e) results in waiver of an argument).

of the judicial review provided by the Virginia Administrative Process Act (VAPA). In so doing, the majority implicitly assumes that the initial pleading in this case was served when the Board served Muse with a complaint initiating the administrative action against Muse. The majority then reasons that Rule 1:12 allows the petition for appeal to be served by mailing because it is not the initial process referred to in the title of the rule. Thus, according to the majority, the judicial review authorized by Code § 2.2–4026 is merely a continuation of the ongoing litigation before the agency. Only by adopting that premise can the majority conclude that "the parties had been at issue for months prior to appellant's appeal to the circuit court" and that "Rule 2A:4 therefore does not require service of process ... as would be needed to *institute* a *new* action." *Supra* at 97, 724 S.E.2d at 218 (emphasis in original). Because I believe the majority is incorrect in its interpretation of both the VAPA and Rule 2A:4, I respectfully dissent.

I begin with the relevant rules of statutory interpretation. When this Court interprets a statute, it must give effect to the intent of the legislature, *Reston Hosp. Ctr. v. Remley*, 59 Va.App. 96, 106, 717 S.E.2d 417, 423 (2011), and when it interprets the rules, it must give effect to the intent of the Supreme Court, the body that adopted them, *see id.; cf. Evans v. Evans*, 280 Va. 76, 82, 695 S.E.2d 173, 176 (2010) (explaining this principle in the context of statutes reviewed by this Court). To that end, this Court's interpretation of a statute or a rule is controlled by "[t]he plain language used by the [governmental actor adopting it], unless that language is ambiguous or otherwise leads to an absurd result." *See Reston*, 59 Va.App. at 106, 717 S.E.2d at 422–23; *see also Evans*, 280 Va. at 82, 695 S.E.2d at 176 ("When the language of a statute [or rule] is unambiguous, we are bound by the plain meaning of that language."). Moreover, we do not read any particular statute or rule in isolation; either must always be understood against the overall scheme created in tandem with other related statutes and rules. *See Reston*, 59 Va.App. at 106, 717 S.E.2d at 422–23; *see also Alston v. Commonwealth*, 274 Va. 759, 769, 652 S.E.2d 456, 462 (2007) (" 'It is a

cardinal rule of construction that statutes [or rules] dealing with a specific subject must be construed together in order to arrive at the object sought to be accomplished.' " (quoting *Prillaman v. Commonwealth*, 199 Va. 401, 406, 100 S.E.2d 4, 7 (1957))).

There are several sound reasons for looking to the VAPA as the starting point in any analysis involving judicial review of administrative actions. First, the VAPA is important because it authorizes the promulgation of Rule 2A:4. Rule 2A:1(a) (stating that the rules under Section 2A "are promulgated pursuant to § 2.2–4026 of the Code of Virginia," the relevant section of the VAPA); *see* Code § 2.2–4026 (authorizing the institution of a court action to review an agency action "in the manner provided by the rules of the Supreme Court of Virginia"). Moreover, a plain reading of the VAPA contradicts the scantly supported proposition by the majority that a review of an agency decision is not "the institution of a new action." *Supra* at 96, 724 S.E.2d at 218. Under the VAPA,

[a]ny person affected by and claiming the unlawfulness of any regulation, or party aggrieved by and claiming unlawfulness of a case decision ... shall have a right to the direct review thereof by an *appropriate and timely court action* against the agency or its officers or agents in the manner provided by the rules of the Supreme Court of Virginia.

Code § 2.2–4026 (emphasis added). Any such action "may be *instituted* in any court of competent jurisdiction" where venue is proper, "and the judgments of the courts of *original jurisdiction* shall be subject to appeal to or review by higher courts as in other cases unless otherwise provided by law." *Id.* (emphasis added).

The particular language used by the legislature here demonstrates its intent to give a person who is subject to an unfavorable decision of an executive branch agency the right to seek relief through the judicial branch by filing a *new action* in the courts of the Commonwealth. In other words, by enacting the VAPA, the legislature authorized certain persons to file suit against an executive branch agency. Code

§ 2.2–4026 speaks not of an appeal from the agency as an inferior tribunal, but rather of the "institution" of a "court action against the agency" in a "court[ ] of original jurisdiction." Moreover, subsequent sections of the VAPA referring to the action described in Code § 2.2–4026 do not refer to the proceeding as an appeal from an inferior tribunal, but instead describe it as a "review action," or otherwise treat it as a separate lawsuit. *See* Code § 2.2–4027 (describing how a court of original jurisdiction must treat the agency's decision "in the review action"); Code § 2.2–4029 (describing the permissible dispositions in "the review action"); Code § 2.2–4030(A) (describing the proceeding as a "civil case" involving a "person [that] contests [an] agency action"); Code § 2.2–4030(B) (noting that the lawsuit authorized by this section of the VAPA should not be construed as authorizing suit where the agency is otherwise "immune from suit," i.e., based on sovereign immunity).[4] Even this Court has previously described an administrative "appeal" to the circuit court like the one at issue here not as an actual appeal but rather as an "action[ ]" by which an agency "can be sued." *Va. Bd. of Med. v. Va. Physical Therapy Ass'n*, 13 Va.App. 458, 465, 413 S.E.2d 59, 64 (1991) (analyzing the issue of sovereign immunity in suits of this kind and holding that "[t]he VAPA expressly provides two *actions* that allow agencies *to be sued:* (1) the adoption of rules, and (2) case decisions" (emphasis added)). Accordingly, it is apparent that the legislature viewed the right created in Code § 2.2–4026 not as a right of appeal from an administrative proceeding before an executive branch agency where "the parties are already at issue," *supra* at 97, 724 S.E.2d at 218, but rather as a cause of action enabling a

---

4. Indeed, Code § 2.2–4026 is an express but limited waiver of an agency's sovereign immunity that would otherwise prohibit a party from filing suit to seek judicial review. *Va. Bd. of Med. v. Va. Physical Therapy Ass'n*, 13 Va.App. 458, 465–66, 413 S.E.2d 59, 63–64 (1991). If, as the majority concludes, an action under Code § 2.2–4026 is simply an appeal of an agency decision in a proceeding originally instituted by the agency, waiver of sovereign immunity would hardly seem necessary.

person to challenge an executive branch agency decision for the first time before the judicial branch.

In light of this clear intent of the legislature in enacting the VAPA, the intent of the Supreme Court in adopting Rule 2A:4 pursuant to the VAPA is even clearer. Rule 2A:4 plainly requires a party seeking to institute a court action against an agency to "file a petition for appeal with the [appropriate] clerk of the circuit court." The filing must include "both the payment of all fees and the *taking of all steps provided in Rules 3:2, 3:3 and 3:4* to cause a copy of the petition for appeal *to be served (as in a civil action)* on the agency secretary...." Rule 2A:4 (emphasis added). Rule 3:2 describes *commencing* a civil action, either by "filing a complaint," or, as required here, "by [filing] a pleading styled 'Petition'" "in the clerk's office." Once filed, "the action is then *instituted* and pending as to all parties defendant thereto," and the person filing the complaint must pay certain fees "before *the summons is issued*" by the clerk. Rule 3:2 (emphasis added). Rules 3:3 and 3:4 describe the filing of pleadings and their service *by the clerk.* As if the language in Rule 3:2 mentioning the issuance of a summons is not clear enough, Rule 3:5 requires the clerk to serve process in the form of a summons once an action is commenced. Moreover, Rule 3:5 clearly establishes that the process in a civil action must be signed and issued by the clerk. Thus, the rules, properly understood along with the VAPA, treat a review action much like any other civil action commenced in a circuit court, at least insofar as service of process is concerned.

Furthermore, other rules dealing with the VAPA make it clear that process must be served on the agency secretary to commence the review action at issue here. Language in Rule 2A:2, dealing with sending a notice of appeal to the agency secretary, makes it clear that the Supreme Court recognized a difference between mailing and service of process and that it did not intend to allow the mere mailing of the petition for appeal to substitute for proper service under Rule 2A:4. Rule 2A:2(b) expressly mentions service by mail. It states:

Any party appealing from a regulation or case decision shall file, within 30 days after adoption of the regulation or after service of the final order in the case decision, with the agency secretary a notice of appeal signed by him or his counsel.... [The notice] shall conclude with a certificate that a copy of the notice of appeal has been *mailed* to each of the parties. Any copy of a notice of appeal that is sent to a party's counsel or to a party's registered agent, if the party is a corporation, shall be deemed adequate and shall not be a cause for dismissal of the appeal.

Rule 2A:2(b) (emphasis added). "When interpreting statutory language, we must assume that the legislature chose with care the words it used and, where it includes specific language in one section but omits that language from another section, we presume that the exclusion of the language was intentional." *Saunders v. Commonwealth*, 48 Va.App. 196, 203–04, 629 S.E.2d 701, 704 (2006). Rule 2A:2 expressly permits the mailing of the notice of appeal to the agency, yet Rule 2A:4 includes no analogous language. It is clear to me that had the Supreme Court intended to authorize service by mail in Rule 2A:4 it would have used the language it included in Rule 2A:2. The fact that it chose not to do so leads me to conclude it did not intend mailed service to suffice.

It is important that we consider these other Rules, since " '[i]t is a cardinal rule of construction that statutes [or rules] dealing with a specific subject must be construed together in order to arrive at the object sought to be accomplished.' " *Alston*, 274 Va. at 769, 652 S.E.2d at 462 (quoting *Prillaman*, 199 Va. at 406, 100 S.E.2d at 7). Rule 2A:3(b) expressly contemplates that compliance with Rule 2A:4 requires the service of process on the agency secretary. In describing the action required of the agency secretary after it receives a notice of appeal from a party subject to a case decision, Rule 2A:3(b) states:

The agency secretary shall prepare and certify the record as soon as possible after the notice of appeal and transcript or statement of testimony is filed and served. Once the court has entered an order overruling any motions, demur-

rers and other pleas filed by the agency, or if none have been filed within the time provided by Rule 3:8 for the filing of a response *to the process served under Rule 2A:4,* the agency secretary shall, as soon as practicable or within such time as the court may order, transmit the record to the clerk of the court named in the notice of appeal.

(Emphasis added). In addition to Rule 2A:3's compelling reference to Rule 2A:4 and the process it requires, Rule 2A:3 also references Rule 3:8 in tandem with its reference to Rule 2A:4. Rule 3:8(a) states, in relevant part, that "the defendant shall file pleadings in response within 21 days *after service of the summons and the complaint [or petition]* on the defendant." (Emphasis added). These rules, when read together, all plainly support the proposition that service of process on the agency secretary is required under Rule 2A:4.[5]

I turn next to the majority's reliance on Rule 1:12. Since the majority views the proceeding before the circuit court below as merely continuing the action that was originally initiated by the administrative agency, the majority treats Muse's certified mailing of the petition for appeal as if it were any other subsequent pleading that might properly be served by mailing under Rule 1:12. There are several reasons why I believe that the majority's reliance on Rule 1:12 is misplaced.

First, despite the majority's assertion, Rule 1:12 does not authorize service of pleadings by mail where the parties are "already at issue," *supra* at 97, 724 S.E.2d at 218; rather, Rule 1:12 provides that "[a]ll pleadings, motions, and other papers" may be served according to its directives if "not required to be served otherwise." Rule 2A:4 plainly requires a pleading "to be served otherwise." Thus, Rule 1:12 actually defers to the directive set forth in Rule 2A:4, not the other way around. The majority ignores this plain reading and, in fact, creates a bizarre paradox, whereby Rule 2A:4 apparently defers to Rule 1:12, but Rule 1:12 defers back to Rule 2A:4. This strained reading is avoided by simply acknowledging that

---

5. Again, process under Part Three of the Rules is, by definition, a summons. Rule 3:5.

Rule 1:12, by its plain terms, does not control where another rule, like Rule 2A:4, sets forth the manner of service.

Second, the majority's reliance on Rule 1:12 is troublesome considering that Rule 2A:4 enumerates other specific rules, and Rule 1:12 is not among those rules. The rules explicitly set forth in Rule 2A:4—Rules 3:2, 3:3, and 3:4—describe *commencing* an action. In contrast, Rule 1:12 plainly applies in other circumstances. Had the Supreme Court intended for Rule 1:12 to apply to the initiation of an agency review action, it would have cited directly to Rule 1:12 in Rule 2A:4, not to those rules particularly describing how to *commence* an action in the first place.

Third, the title of Rule 1:12 demonstrates the Supreme Court's intent that the rule apply after *initial process* is served. The title of Rule 1:12 is "Service of Papers after the Initial Process." Although the title is not an operative part of the rule, it nonetheless may be used to construe its purpose. *See Hawkins v. Commonwealth*, 255 Va. 261, 269, 497 S.E.2d 839, 842 (1998) ("A title may be read in an attempt to ascertain an act's purpose, though it is no part of the act itself."). The title illuminates the obvious purpose of Rule 1:12—to facilitate the easy communication of court documents between parties after one party has served the other with the initial process. *See Va. Ret. Sys. v. Avery*, 262 Va. 538, 543 n. 2, 551 S.E.2d 612, 614 n. 2 (2001) (noting that Rule 1:12 was amended in 1999 to authorize "service of papers *after* initial process through a 'commercial delivery service' " (emphasis in original)). That purpose makes it clear that the Supreme Court intended for a party initiating a review action to serve process on the agency secretary, and not to allow for the application of the further provisions of Rule 1:12 before service of that initial process.

For the above reasons, the Rules are quite clear that a person instituting a review action, as Muse did here, must, within 30 days after the filing of a notice of appeal, pay all fees and take all steps necessary to cause the clerk of the circuit court to serve both a copy of the petition and a summons on

the agency secretary. Thus, simply mailing the agency secretary a copy of the petition for appeal by certified mail, as Muse did, is insufficient to cause the petition to be "served" on the secretary in compliance with Rule 2A:4.

Finally, given what I perceive to be the clear meaning of the VAPA and the Rules, I would not even resort to examining the history of the Rules, as the majority has done. The majority's choice to go down that path, however, leads me to comment upon what I believe to be the flaw in that analysis. I think it simply wrong to suggest that the 2006 amendment to Rule 2A:4 was a substantive change, or in the words of the majority, that the amendment "evidences a departure from the prior practice that service by a process server be performed." *Supra* at 96, 724 S.E.2d at 218. I come to this conclusion for three reasons.

First, the 2006 amendments to the Rules were an omnibus series of amendments merging the previously distinct procedures in courts of equity and courts of law together to create uniform rules of practice. As Rule 3:1 states, "There shall be one form of civil case, known as a civil action." Given this change in Virginia court practice, "the procedural provisions in Parts Two and Three of the Rules of the Supreme Court [were] harmonized." Kent Sinclair, *Guide to Virginia Law & Equity Reform and Other Landmark Changes* § 1.01(C) (2006); *see also* Judicial Council of Va., *Report to the General Assembly and Supreme Court of Virginia* 42 (2004), *available at* http://www.courts.state.va.us/courtadmin/judpolicies/2004_jcv_report.pdf (noting that the amendment to the "Rules of Court provide that there will be one form of action in the Virginia courts, called a civil action, and that the procedural provisions in Parts Two and Three of the Rules of the Supreme Court be harmonized"). Thus, "New Part Three of the Rules ... melds existing Parts Two and Three into a single roster of *procedural* rules applicable to both legal and equitable claims." Sinclair, *supra,* § 1.01(C) (emphasis added). Accordingly, the Rules made no substantive change to legal or equitable principles—the concepts themselves were not merged, but simply their procedural practice. Judicial Council of Va., *supra,* at 42–43; Sinclair, *supra,* § 1.01(C)(1).

"Apart from creating a single 'side' at the circuit court level, no expansion or contraction of powers of any court, *or of claims properly heard therein,* . . . result[ed]. [ ]Nor [were] venue, forum non conveniens, or *service of process rules . . . affected in any way* " by the pleading reform. Judicial Council of Va., *supra,* at 43 (emphasis added); *see also* Sinclair, *supra,* § 1.01(C)(2) (using almost exactly the same words to describe the amendments to the Rules of Court). Thus, the 2006 amendments merely changed the wording of several rules to account for this change in practice. *See, e.g.,* Rule 3:2 (now describing the commencement of "[a] civil action"); Rule 3:4 (now explaining that the plaintiff is required to furnish the clerk with copies of the "complaint"); Rule 3:8 (now identifying answers to a "complaint"). Accordingly, the Supreme Court did not intend to substantively change Rule 2A:4 or its service requirements when it amended the rule in 2006.

Second, the fact that a review action is now filed in a court of law rather than a court of equity makes no difference in determining whether this is a new judicial action or a mere continuation of the administrative proceeding. The majority recognizes that under the previous language of Rule 2A:4 the judicial review of an agency decision was a new proceeding when it states that the filing of "[a] bill of complaint in equity was the initial pleading used to institute a new action in chancery." *Supra* at 96, 724 S.E.2d at 217. I fail to see how the 2006 amendments that did nothing more than streamline the procedural rules changed this fact. The key distinction is not that a person seeking review of an agency action once dealt with a court of equity, but rather that, under either the old practice or the current practice, he must deal with any *court* at all. It is that process—going from an administrative agency to a court—that demonstrates the initiation of new action. Therefore, the change that now requires a person to effect service "as in a civil action" rather than "as in the case of a bill of complaint in equity" is a mere distinction without a difference.

Third, regardless of any difference between the old equity procedure and the now unified procedure, the fact remains that the Supreme Court modified only the language regarding

the kind of court to file the action in, not *whom* to file it with, and importantly, not what that actor is required to do with it. Under the old Rule, the party still had to " 'file his petition for appeal with the clerk of the circuit court.' " *Bendele v. Commonwealth,* 29 Va.App. 395, 397 n. 1, 512 S.E.2d 827, 828 n. 1 (1999) (quoting the pre-amendment version of Rule 2A:4). " 'Such filing [was required to] include all steps provided in Rules 2:2 and 2:3 *to cause a copy of the petition to be served* (as in the case of a bill of complaint in equity) on the agency secretary and on every other party.' " *Id.* (quoting the pre-amendment version of Rule 2A:4). Likewise, under the new rule, the party must "file his petition for appeal with the clerk of the circuit court" within thirty days of the filing of the notice of appeal. Rule 2A:4.

> Such filing shall include within such 30–day period both the payment of all fees and the taking of all steps provided in Rules 3:2, 3:3 and 3:4 *to cause a copy of the petition for appeal to be served* (as in a civil action) on the agency secretary and on every other party.

*Id.* (emphasis added). Hence, the Supreme Court did not amend the requirement that the person take all steps necessary for the *clerk of court* to "cause a copy of the petition to be served . . . on the agency secretary," evidencing a clear intent by the Supreme Court not to change Rule 2A:4 substantively.

Although not a part of my analysis, I must at least mention the practical, albeit perhaps unintended, consequence of the majority's holding. According to the majority, when an agency receives a mere copy of a petition for appeal in the mail, both it and the Attorney General must take action to file a response even though the notice of appeal may not yet have been filed with the court. As the Board of Contractors mentioned at oral argument, it regularly receives such correspondence that never materializes into actual court proceedings. The certainty attendant to a court summons provides a necessary check against litigious parties and allows the agency to limit its responses to petitions that have actually been filed with the clerk of court. *See Bendele,* 29 Va.App. at 399, 512 S.E.2d at 829 ("The formality of process serves a legitimate

purpose. Process is official notice which informs the opposing party of the litigation and instructs the party when and where it must respond. Without this official notice, the recipient knows neither if the action was filed nor when it was filed."). Without that check, the Commonwealth will now needlessly waste resources defending against phantom lawsuits.

Moreover, this procedural nightmare is amplified by the problem posed by challenges to regulations. This case involves a challenge to an agency case decision directed at a specific person. However, Code § 2.2–4026 plainly treats the review of a case decision and the review of the adoption of a regulation the same. Yet, there is no previous "party at issue" in the latter. A regulation may be challenged by "[a]ny person affected by and claiming the unlawfulness of any regulation." Code § 2.2–4026. In holding as it has, the majority has created two different types of service under Rule 2A:4 depending on whether there is a "party at issue" before the agency. While the majority attempts to limit its holding to "an agency's case decision where the parties are already at issue," *supra* at 97 n. 2, 724 S.E.2d at 218 n. 2, Code § 2.2–4026 makes no such distinction. Clearly, the Supreme Court could never have foreseen nor intended such consequences when it amended Rule 2A:4 to conform to the merger of law and equity procedures.

In light of the foregoing, I believe that the majority has incorrectly interpreted the law set forth under the relevant portions of the VAPA and the Rules of the Supreme Court of Virginia. In my view, Muse did not comply with Rule 2A:4 by simply mailing the petition for appeal to the agency secretary. Therefore, I would affirm the decision of the circuit court holding that Muse's mailing was insufficient service under Rule 2A:4, which ultimately resulted in the dismissal of the petition for appeal.[6]

---

6. I reach no conclusion regarding whether dismissal was an appropriate disposition in this case, because Muse did not raise the issue to the circuit court or this Court. In the circuit court, the Board filed a motion to dismiss after *Muse* requested the clerk to issue service of

process and have it properly served. In that motion, the Board argued that an additional 2010 amendment to Rule 2A:4 required Muse to take that action within 30 days after the filing of the notice of appeal, and further argued that the proper remedy for failing to comply with the rule was dismissal. In its final order, the circuit court found that "Muse's appeal was not served upon the agency secretary in a timely manner in accordance with the Rules" and that Muse failed "to take the steps required by [the Rules] for filing and service of a complaint to commence a civil action to have the petition for appeal served with process upon the agency secretary within 30 days after the filing of the notice of appeal." It then concluded that "[t]his failure to comply with a mandatory Rule applicable to and required for perfection of all administrative appeals, prevents this Court from acquiring active jurisdiction over the appeal and subjects the appeal to dismissal." The record before us does not demonstrate that Muse took issue with the circuit court's holding that non-compliance with the Rules required the court to dismiss the action. Moreover, Muse has not raised or argued this specific issue on appeal. Accordingly, under Rules 5A:18 and 5A:20, this Court should not address the issue, and thus I assume for purposes of this appeal that dismissal was the appropriate disposition.